556 P.2d 345

Barbara T. HAZELWOOD, Plaintiff-Appellant,

v.

Ernest R. HAZELWOOD, Defendant-Appellee.

No. 10628.

Supreme Court of New Mexico.

Nov. 15, 1976.

———◆———

David F. Boyd, Jr., Scott H. Mabry, Albuquerque, for plaintiff-appellant.

Peter McAtee & Associates, W. Peter McAtee, Albuquerque, for defendant-appellee.

## OPINION

OMAN, Chief Justice.

This suit was brought to recover past due installments of alimony payments. These payments were awarded to plaintiff in a consent decree of divorce entered on August 20, 1969, by a Utah court. Defendant counterclaimed and sought to have the award of alimony reduced on the ground of changed circumstances.

The cause was tried and the district court entered a judgment relieving defendant

from further obligation to make future payments of alimony, as well as the delinquent payments which had accrued after July 1, 1973. This was done upon the ground that as of that date plaintiff had entered into a "de facto marriage." We reverse.

The parties had previously been husband and wife and have two children. On August 20, 1969, a Utah court entered a final decree of divorce by which defendant—the former husband and plaintiff in the Utah case—was ordered:

(1) To pay plaintiff—the former wife and defendant in the Utah suit—as alimony, the sum of $250.00 on the 10th day of each and every month, commencing April 10, 1969.

(2) To pay plaintiff for the care and support of each of their two minor children the sum of $100.00 per month until each child had attained majority or was sooner emancipated.

The defendant paid to plaintiff, through a military dependency allotment, the sum of $450.00 per month until March 1973. At that time, the husband reduced the allotment to $200.00 per month. On October 25, 1973, one of the children attained her majority. However, the dependency allotment in the amount of $200.00 per month continued. The trial court found that the $100.00 per month paid as support for the child who had attained majority should be applied to the accrued and unpaid alimony for the period between March 1973, when the allotment payments were reduced by $250.00, and July 1, 1973, when the so-called "de facto marriage" came into existence. Otherwise, defendant received no credit for or reimbursement of the overpayment of $100.00 per month for child support. It is obvious that the trial court recognized the liability of defendant for accrued alimony during this period from March to July 1, 1973, but, as stated, offset against it a portion of the voluntary child support payments made on behalf of the adult child.

The trial court concluded that "by reason of the de facto marriage of plaintiff and other grounds presented to the Court by Defendant, the Defendant is not in default under the terms of the prior Decree [Utah decree]." However, it is obvious that the so-called "de facto marriage" was the controlling consideration for this holding, because, as already stated, the district court recognized the liability of defendant for payment of accrued alimony to July 1, 1973, when it found as a fact that the "de facto marriage" existed or came into being and concluded that a material change in the circumstances of the parties had come into existence. The "other grounds presented to the Court by Defendant" occurred or came into existence prior to, or predated July 1, 1973. Thus, the real and only substantial issue before us is whether or not there is such a legally recognized relationship as a "de facto marriage," and, if so, whether that relationship is a ground for relieving a former spouse of his or her obligation to pay the other former spouse alimony as ordered by a court of competent jurisdiction.

As to the jurisdiction of the New Mexico court, the district court concluded that it had jurisdiction of both the parties and the subject matter, that the provision for alimony in the Utah decree may be modified by the New Mexico court, and that this modification of the alimony award could be retroactive. The challenge on appeal relates only to the validity of the New Mexico district court's holding that a "de facto marriage" is, in and of itself, ground for modification. The plaintiff advised the district court as of January 27, 1975 that she did not dispute the power and jurisdiction of that court to amend the Utah decree prospectively, but, as we understand her position on appeal, she urges that a so-called "de facto marriage" is not a ground for a retroactive modification of an alimony award, and is not sufficient in and of itself to make a prospective modification of such an award.

 The right of alimony is clearly a continuation of the right to support, and is a personal and not a property right. *Burnside v. Burnside,* 85 N.M. 517, 514 P.2d

36 (1973) ; *Chavez v. Chavez,* 82 N.M. 624, 485 P.2d 735 (1971) ; 2 W. Nelson, Divorce and Annulment § 14.06 (2d ed. 1961). As already stated, plaintiff agrees the New Mexico court has jurisdiction to modify prospectively the Utah decree of alimony. However, the authority to modify an alimony decree does not include the authority to make a retroactive modification of accrued and vested payments, unless the foreign state which entered the alimony decree had authority to do so or had done so prior to the maturity of the payments. *Corliss v. Corliss,* 89 N.M. 235, 549 P.2d 1070 (1976) ; *Lee v. Lee,* 220 Md. 325, 152 A.2d 561 (1959) ; *Grossman v. Grossman,* 242 S. C. 298, 130 S.E.2d 850 (1963). See also *Sistare v. Sistare,* 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905 (1910) ; *Hollis v. Hollis,* 508 S.W.2d 179 (Tex.Civ.App.1974) ; *Wallis v. Wallis,* 9 Utah 2d 237, 342 P.2d 103 (1959) ; *Openshaw v. Openshaw,* 102 Utah 22, 126 P.2d 1068 (1942) ; *Cole v. Cole,* 101 Utah 355, 122 P.2d 201 (1942) ; *Myers v. Myers,* 62 Utah 90, 218 P. 123 (1923) ; *Cody v. Cody,* 47 Utah 456, 154 P. 952 (1916).

■ Both New Mexico and Utah recognize that changed circumstances may justify a prospective modification, or even termination of a prior award of alimony. *McClure v. McClure,* 90 N.M. ——, 559 P.2d 400 (1976) ; *Wallis v. Wallis,* supra; *Openshaw v. Openshaw,* supra. Each state holds that its courts have the power to abate retroactively accrued alimony payments from the date of the remarriage of the former spouse to whom alimony has previously been awarded. *Chavez v. Chavez,* supra; *Kuert v. Kuert,* 60 N.M. 432, 292 P.2d 115 (1956) ; *Austad v. Austad,* 2 Utah 2d 49, 269 P.2d 284 (1954). However, insofar as we are informed by the briefs and arguments in the present case and by our own research, neither New Mexico nor Utah has ever recognized a so-called "de facto marriage" as a ground for abating accrued alimony payments, or for even modifying an alimony award prospectively.

■ We do know that the record fails to show that plaintiff has entered into a recognized de jure or valid marriage, and that the district court did not so find. We also know that the court found the facts in the present case constituted a "de facto marriage," and that the court apparently equated a "de facto marriage" with a de jure or legally-recognized marriage, at least insofar as the effect thereof is concerned in vesting the court with the power to modify retroactively, as well as prospectively, an award of alimony. We further know that neither New Mexico, Utah nor Virginia, in which last mentioned state this "de facto marriage" supposedly was consummated and existed, recognizes any marriage consummated therein which is not formally consummated by contract and solemnized before an official. Section 57–1–1 and –2, N.M.S.A.1953 (Repl.Vol. 8, pt. 2, 1962) ; Utah Code Ann. § 30–1–6 (2nd Repl.1976) ; Va.Code Ann. § 20–13 (Repl. 1975) ; *Offield v. Davis,* 100 Va. 250, 40 S.E. 910 (1902).

Although we cannot be certain from the record, we assume the district court adopted the term and concept of "de facto marriage" from the Wisconsin court's decision in *Taake v. Taake,* 70 Wis.2d 115, 233 N.W. 2d 449 (1975). At least this is the only judicial authority known to us in which a so-called "de facto marriage" has been recognized as having legal significance and as constituting grounds for modifying a decree awarding alimony. As above noted, we fully recognize that changed conditions may constitute a ground for a prospective modification or termination of alimony, and a de jure marriage, whether ceremonial or common law, constitutes a ground for a retroactive modification or termination of an award of alimony. However, a "de facto marriage," whatever may be required to constitute such, has not been recognized, except by the court in the *Taake* case, as grounds for retroactively modifying or abating accrued alimony payments. We decline to follow the *Taake* decision.

■ As to the abatement of accrued alimony, the district court was clearly in error. *Corliss v. Corliss,* supra. As to the prospective termination of the alimony award, we are unable to determine whether

this was or was not proper in view of the fact that the court predicated this termination, at least in large part, upon its finding of a "de facto marriage." The district court does have discretion to modify prospectively or terminate an alimony award, if the circumstances so warrant. *McClure v. McClure,* supra.

The judgment of the trial court should be reversed and the cause remanded for such further action as the district court may deem proper in the light of this decision.

IT IS SO ORDERED.

SOSA and EASLEY, JJ., concur.