602 P.2d 1030

In the Matter of the ESTATE OF
Bernice Jarrott LORD, Deceased.

Sue Clair HUGHES, Personal Representa-
tive of the Estate of Bernice Jarrott
Lord, Petitioner,

v.

Robert W. LORD, Respondent.

No. 12510.

Supreme Court of New Mexico.

Nov. 21, 1979.

Modrall, Sperling, Roehl, Harris & Sisk,
Alan K. Konrad, Albuquerque, for petition-
er.

Jones, Gallegos, Snead & Wertheim, Ste-
ven L. Tucker, J. E. Gallegos, Santa Fe, for
respondent.

OPINION

SOSA, Chief Justice.

This suit was brought by petitioner, Sue
Clair Hughes, for the formal probate of the
will of her deceased sister, Bernice Jarrott
Lord, and for appointment of Hughes as
personal representative of decedent's es-
tate. Decedent's husband, Robert W. Lord,
objected to the formal probate of the will,
contending that an oral antenuptial agree-
ment whereby decedent allegedly agreed to
leave all her property to Lord in return for
his promise to marry her should be specifi-
cally enforced, notwithstanding the terms
of decedent's will. The trial court excluded
any evidence as to the alleged antenuptial
agreement on the grounds that any such
agreement was unenforceable because it
would violate the Statute of Frauds and
would be contrary to public policy. The
Court of Appeals reversed and remanded
the case to the trial court with directions to
hear the excluded evidence. We granted

certiorari. We reverse the Court of Appeals and affirm the trial court.

Decedent, a sixty-four year old widow, who lived alone on a ranch outside Santa Fe, was suffering from squamous cell cancer. According to Lord, in October 1974, decedent allegedly agreed to devise to him her entire estate if he would marry her and "take care of her like a husband would" until her death. Lord contends that he agreed to this proposal, and he and decedent were married on November 21, 1974. The will which was admitted to probate was executed on the following day. The will devised ten thousand dollars to Lord, but left the bulk of decedent's estate to her sister, Hughes.

Lord contends that he fulfilled his part of the alleged oral antenuptial agreement by caring for decedent until her death in 1977. Consequently, he contends that rather than admitting the will to probate, the trial court should have specifically enforced this oral antenuptial agreement.

On the first day of trial, Hughes, contending that the alleged agreement was void and unenforceable, filed a motion in limine to exclude all evidence bearing on that agreement. The trial court granted the motion, but allowed Lord to make an offer of proof. The court found that the alleged agreement was void and unenforceable because it violated the Statute of Frauds and was against public policy.

The Court of Appeals held that a motion in limine is improper in a non-jury case, and that the trial court therefore erred in refusing to hear the evidence regarding the alleged antenuptial agreement. The court remanded the case to the trial court for the purpose of hearing the evidence Lord sought to introduce concerning the alleged agreement.

Hughes petitioned for a writ of certiorari, contending that if an oral antenuptial agreement whereby one spouse agrees to leave all his property to the surviving spouse in return for a promise of marriage is unenforceable, then no purpose would be served by remanding the case to the trial

court for the purpose of hearing evidence concerning that alleged agreement. This follows, Hughes argues, because the ultimate result must necessarily be the same on remand.

We agree with Judge Sutin's dissent from the Court of Appeals' decision, wherein he stated that the issue is "whether the oral agreement, irrespective of any evidence based thereon, was invalid as a matter of law, not the propriety of the name given to the motion" which sought to exclude such evidence.

In *Tellez v. Tellez*, 51 N.M. 416, 186 P.2d 390 (1947), this Court held that a contract whereby one spouse agrees to pay the other spouse for his or her care, which is part of the other's duties as a spouse, is against public policy and is therefore void. In that case, Mr. Tellez was alleged to have orally agreed to leave all his property to one Guadalupe Diaz "if she would marry him and take care of him as his wife until his death." 51 N.M. at 418, 186 P.2d at 391. After marrying Ms. Diaz, Tellez executed a deed to his real estate in favor of his children. Following his death, Tellez' widow brought an action for specific performance of the alleged oral antenuptial agreement, which this Court refused to enforce.

 We believe that *Tellez* states a proper principle, and we hereby reaffirm the public policy basis for that decision. It is the policy of this state to foster and protect the marriage institution. It is not the policy of the state to encourage spouses to marry for money.

 Lord seeks to distinguish the alleged agreement in this case from the agreement in *Tellez* on the basis that he performed extraordinary services, far beyond the normal duties any spouse owes to the other spouse. However, even if we were to recognize that such a distinction would require a different result, which is a question we do not reach, the offer of proof Lord made and his testimony at trial do not establish the basis for such a distinction.

Lord testified that the only services he was to render to decedent were "to be a loyal, faithful husband," and "to take care of her like a husband would." The evidence indicates that decedent was very ill during the marriage, and that Lord assisted decedent and attempted to alleviate her suffering. However, there is nothing exceptional or extraordinary about one spouse utilizing his or her particular skills or aptitudes to assist the other spouse in times of trouble. Such a situation does not materially differ from the situation in *Tellez*.

Therefore, the decision of the Court of Appeals is reversed and the judgment of the trial court is affirmed.

IT IS SO ORDERED.

EASLEY, PAYNE, FEDERICI and FELTER, JJ., concur.