COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| | § | |
| THORSTEN RANSAVILLE FARRELL, | | No. 08-13-00021-CV |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 383rd District Court |
| | § | |
| ANA FARRELL, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 2011DCM10297) |
| | § | |

## O P I N I O N

Thorsten Farrell appeals a decree of divorce challenging the trial court's determination of the date a common law marriage occurred and complaining of the divestiture of separate property federal retirement benefits as a result. For the reasons that follow, we must affirm.

### FACTUAL SUMMARY

The parties were originally married on September 6, 1994 and divorced in Deming, New Mexico in May 2003. In the decree, Thorsten was awarded their home at 1615 Bryant Street, where he continued to live. After the divorce, Ana and the children moved to El Paso. She testified that Thorsten visited with them in El Paso frequently and he would spend the weekends in her apartment. Significantly, she testified that, "we decided in January of 2004 to get back together." In January 2004, Thorsten attended a Border Patrol training program in North Carolina for approximately four months. According to Ana, they began using a joint bank

account and in May 2004, when her lease expired, she moved from El Paso to Deming. When Thorsten returned from North Carolina in May, they began living together in the Bryant Street home. Thorsten recalled that they began living together in August 2004. They discussed becoming remarried, "but we just didn't do it." The Bryant Street home was sold and the Sadler Street residence purchased in May 2005. That house was put on the market for sale in 2008.[1] It had not sold as of the date of trial, nor was it consistently rented.

The parties separated in the summer of 2011 and Ana filed for divorce in December 2011, alleging that the parties were married on September 6, 2004.[2] Thorsten's counter petition alleged that the parties were married on or about December 2004. The live pleadings at trial contained these same assertions. At the beginning of trial, Ana's attorney asked the court to find that a marriage occurred in January of 2004. Thorsten's attorney asked the court to find that a marriage occurred in January 2005.

Thorsten is employed by the United States Border Patrol. The parties stipulated on the record that any benefits he received through his Federal Employee Retirement Savings (FERS) or Thrift Savings Plan would be divided equally from the date of the common law marriage through the date of the parties' second divorce. And while they agreed that they had entered into a common law marriage, they disagreed as to the date it was effective. During trial, documentation was introduced establishing that the couple's daughter was re-enrolled in the Deming school district on August 15, 2004. The trial court determined that the parties had

---

[1] It is not apparent from the record when the parties moved out of the Sadler house. Ana, who experienced some difficulty testifying in English, said, "I'm not sure when we bought that house. Since we bought that house until 2000 -- December 2009." If that is true, we cannot ascertain where the couple lived between that date and when they separated in the summer of 2011.

[2] We find nothing in the record to substantiate this allegation nor was there any testimony about it. We do note that it represents what would have been the couple's tenth wedding anniversary had they not divorced.

established a common law marriage as of August 15, 2004 and divided Thorsten's federal retirement benefits equally between the parties from that date until the divorce was granted.

Thorsten's trial counsel filed a motion for new trial complaining of issues related to child support and alleging that the court divided his retirement benefits based upon an inaccurate date of marriage, but did not advise the court of the specific issue now urged on appeal. Thereafter Thorsten filed two motions *pro se* on January 24, 2013 related to findings of fact. He then employed appellate counsel effective February 6, 2013. The hearing on the motion for new trial was held March 12, 2013. His appellate counsel argued that in Texas, a common law marriage does not exist until all of the requirements have been met. At that point, she did not yet have a record of the testimony. In the appellate brief, counsel alleges that while the couple may have been living together in 2004, they were not living together in Texas. Consequently, the argument continues, there was no evidence from which the trial court could have reasonably found the existence of an informal marriage under Texas law.

## COMMON LAW MARRIAGE IN TEXAS

Texas recognizes common law marriages which pursuant to the Texas Family Code are statutorily known as marriages without formalities:

### § 2.401. Proof of Informal Marriage

(a) In a judicial, administrative, or other proceeding, the marriage of a man and a woman may be proved by evidence that:

   (1) a declaration of their marriage has been signed as provided by this subchapter; or

   (2) the man and woman agreed to be married and after the agreement they lived together **in this state** as husband and wife and there represented to others that they were married.

[Emphasis added].  TEX.FAM.CODE ANN. § 2.401 (West 2006).  Only the second requirement is in dispute.  Does the evidence support the finding that the parties lived together in Texas?

The existence of an informal marriage is a fact question, and the party seeking to establish existence of the marriage bears the burden of proving the three elements by a preponderance of the evidence.  *Small v. McMaster,* 352 S.W.3d 280, 282-83 (Tex.App.--Houston [14th Dist.] 2011, pet. denied).  The proponent may prove an agreement to be married by circumstantial as well as direct evidence. *Russell v. Russell,* 865 S.W.2d 929, 933 (Tex. 1993); *Lewis v. Anderson,* 173 S.W.3d 556, 559 (Tex.App.--Dallas 2005, pet. denied).

An informal marriage does not exist unless all three elements are present.  *Small,* 352 S.W.3d at 283; *Eris v. Phares,* 39 S.W.3d 708, 713 (Tex.App.--Houston [1st Dist.] 2001, pet. denied).  And all three elements must exist at the same time.  *Palacios v. Robbins*, No. 04-02-00338-CV, 2003 WL 21502371 *3 (Tex.App.--San Antonio July 2, 2003, pet. denied)(not design. for pub.).  The elements of an informal marriage are determined on a case-by-case basis. *See Estate of Claveria v. Claveria,* 615 S.W.2d 164, 166 (Tex. 1981).  Thorsten admitted, the school records verified, and the trial court determined that the parties' established a common law marriage in August 2004.

The first problem, of course, is that there was no Texas common law marriage because in August 2004, all of the parties were residing in New Mexico, not Texas.  And while Ana claimed that at various points right after the first divorce, Thorsten was spending entire weekends with her in El Paso, it is clear from her testimony that the parties did not ***agree*** to be married until January 2004.  The Family Code requires cohabitation in the state of Texas ***after the parties agree to be married.***  TEX.FAM.CODE ANN. § 2.401.  The second problem is that New Mexico does not recognize common law marriage in its statutory scheme.  *Oliver v. Oliver*, 889 S.W.2d

271, 272 (Tex. 1994); *Dion v. Rieser*, 285 P.3d 678, 682 (N.M.App, 2012), *cert. denied,* 294 P.3d 1243 (N.M. Jun. 14, 2012); *Merrill v. Davis*, 100 N.M. 552, 673 P.2d 1285, 1286 (N.M. 1983, no cert.).  Thus, there could be no New Mexico common law marriage.  In any event, neither party introduced evidence of New Mexico law, nor asked the court to take judicial notice of New Mexican law.  We must thus address the appropriate standard of review and matters relating to preservation of error.

## STANDARDS OF REVIEW

Thorsten challenges both the legal and factual sufficiency of the evidence to support a finding that a common law marriage was established in August 2004.  A "no evidence" or legal insufficiency point is a question of law which challenges the legal sufficiency of the evidence to support a particular fact finding. The reviewing court must credit evidence that supports the finding if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). "No evidence" points must, and may only, be sustained when the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence establishes conclusively the opposite of the vital fact. *Id.*

"Insufficient evidence" or factual insufficiency involves a finding that is so against the great weight and preponderance of the evidence as to be manifestly wrong. The test for factual insufficiency points is set forth in *ln re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). In reviewing a point of error asserting that a finding is against the great weight and preponderance of the evidence, we must consider all of the evidence, both the evidence which tends to prove the

existence of a vital fact as well as evidence which tends to disprove its existence. If the verdict is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained. This is true even if the finding is supported by more than a scintilla of evidence and even though reasonable minds might differ as to the conclusions to be drawn from the evidence.

Findings of fact in a bench trial have the same force and dignity as a jury's verdict upon questions and are reviewed for legal and factual sufficiency of the evidence by the same standards. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex. 1996); *Tierra Sol Joint Venture v. City of El Paso,* 311 S.W.3d 492, 498 (Tex.App.-El Paso 2009, no pet.). However, this appeal proceeds without benefit of findings of fact. Thorsten -- while representing himself *pro se* -- filed an untimely request and he did not comply with the rule which requires the filing of a reminder request. TEX.R.CIV.P. 296, 297. Nevertheless, it is clear from the record that the trial court found the marriage began on August 15, 2004, the date the couple's daughter was enrolled in school in Deming.

## PRESERVATION OF ERROR

As we have mentioned, both parties believed that a common law marriage had been created at some point between January 2004 and January 2005. Their pleadings, testimony, and agreements on the record clearly establish this, despite the fact that the premise was erroneous. It is also clear that the trial court's finding that a common law marriage began on August 15, 2004 is erroneous as well. The question remaining is, was error preserved? We disagree with Ana's position that a motion for new trial was required to assert the argument. A point in a motion for new trial is only a prerequisite to a complaint on appeal in the five circumstances enumerated in Rule 324(b). TEX.R.CIV.P. 324(b). Any finding of fact in a bench trial may be

- 6 -

challenged for the first time on appeal as to the legal and factual sufficiency of the evidence to support it. TEX.R.APP.P. 33.1(d). But at some point in the trial court below, Thorsten was required to at least raise the argument. This is especially true inasmuch as the Supreme Court has narrowly construed the concept of fundamental error, holding that it exists in those rare instances in which the trial court lacked jurisdiction or the public interest is directly and adversely affected. *Wal-Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 328 (Tex. 1993). Simply stated, complaints on appeal must have been presented to the trial court.

As a prerequisite to present a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint, ***unless the specific grounds were apparent from the context.*** [Emphasis added]. TEX.R.APP.P. 33.1(a)(1)(A). The reason, of course, is to give the trial judge the opportunity to correct the error. Here follows the sole argument from Thorsten's counsel at the hearing on the motion for new trial:

> The other issue is with regard to property division. We believe that the Court divested Mr. Farrell of his separate property. There's case law stating that common-law marriage, under Texas law, does not exist until all of the requirements have been met. So if you meet some of them, but not all of then, the common-law marriage hasn't started yet. The Court divided his retirement based on a date that we believe is -- is inaccurate. I don't have the record of the testimony, obviously, but those are the arguments that we're making.
>
> We're asking the Court to grant a new trial on that basis, so we can -- I don't know that the issue -- I don't know how thoroughly the issue of the date of marriage, and the -- the law on that topic was really presented to the Court. My client's recollection is that it was not litigated real heavily, but that -- the -- the evidence was not presented that was sufficient to establish the earlier date of the marriage.

This argument relates to the court's finding that the parties created a common law marriage on August 15, 2004. That is the only context in which the parties presented their disputed regarding

a common law marriage.  But that statement is insufficient to put the trial court on notice that Thorsten's complaint was that no marriage existed because the couple did not cohabit in Texas. Nor could the trial judge have intuited such an argument, since the pleadings, the testimony, and the arguments of counsel all related to the date of cohabitation and not the locale.

We overrule Issue One.  Consequently, we do not reach Issue Two regarding divestiture of separate property.  The judgment of the trial court is affirmed.

January 28, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)